UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NICOLE BEVERLY<br>　　　　Plaintiff | CIVIL DOCKET NO.: _____ |
| vs. | DISTRICT JUDGE: _____ |
| AL'S PEST CONTROL<br>SERVICE, INC.<br>　　　　Defendant | MAGISTRATE: _____ |

**COMPLAINT AND DEMAND FOR DAMAGES STEMMING FROM ACTS OF DISCRIMINATION AND RETALIATION PROHIBITED UNDER THE AMERICANS WITH DISABILITIES ACT, THE AGE DISCRIMINATION IN EMPLOYMENT ACT, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AND 42 USCA §1981**

**NOW COMES** your Complainant, Nicole Beverly, by and through her undersigned attorney, who hereby submits this Complaint and Demand for Damages for the following reasons, to-wit:

I.    **JURISDICTION AND VENUE**

1.

Complainant brings this action under the Americans with Disabilities Act, 42 USCA §12101, *et seq.* (hereinafter referred to as the "ADA"), The Age Discrimination in Employment Act, 29 USCA §623, *et seq.* (hereinafter referred to as the "ADEA"), Title VII of the Civil Rights Act of 1964 (as amended), 42 USCA §2000e, *et seq.* (hereinafter referred to as "Title VII"), and 42 USCA §1981 ((hereinafter referred to as the "Equal Rights Statute").

2.

The Court's jurisdiction is based upon 28 USCA §1331 and §1343 (3) and (4).

3.

Venue is appropriate in this Judicial District under 28 USCA §1391(b), as the events giving rise to the Complaint occurred within the Court's territorial boundaries.

4.

Complainant shows that, prior to filing the instant pleading, she submitted an administrative Charge of Discrimination concerning the discriminatory and retaliatory actions described below to the Equal Employment Opportunity Commission. In response to said Charge, Complainant received a Dismissal and Notice of Rights form from the Commission on December 21, 2022. Fewer than 90 days have passed since the issuance of said Right to Sue form. Accordingly, all procedural barriers to the filing of the instant lawsuit have been satisfied and Complaint's case is now ripe for judicial determination.

II.  **PARTIES**

5.

Complainant is a citizen of the United States and a major, competent resident of the Parish of Orleans, State of Louisiana.

6.

The Defendant, Al's Pest Control Service, Inc., is a domestic corporation domiciled in the Parish of Lafayette, with an active branch office located in the Parish of Orleans.

7.

The Defendant employs over Twenty (20) full-time employees and is, to Plaintiff's knowledge, subject to the above-listed federal statutes in all other respects.

8.

Complainant suffers from a number of health conditions which significantly limit one or more of her major life activities *i.e. walking, sitting, standing, sleeping, speaking, concentrating, writing,*

*typing, and driving.* The following is a partial list of said health conditions: *a) Raynaud's Phenonmenon; b) psychogenic nonepileptic seizure disorder; c) anxiety; d) dysphasia; e) hypertension; f) carpel tunnel syndrome w/ radial nerve compression; g) osteoarthritis; h) fibromyalgia.*

9.

Alternatively, Complainant avers that she was *perceived* as suffering from one or more debilitating health conditions by the Defendant's owner(s) and/or supervisory personnel.

10.

Thus, Complainant is a qualified individual with a disability, as defined by the ADA. Consequently, her employers are required to make reasonable accommodations for her, where doing so will allow Complainant to perform her essential job functions without significant disruption to the workplace.

11.

Complainant is also over the age of 40, and thus a covered person under the ADEA.

12.

Complainant further belongs to multiple protected classes (*i.e.* African-American and female) under Title VII. In addition, Complainant is comparatively dark-complected, and thus a potential target of discrimination due to colorism.

III.  **VIOLATIONS OF THE ADA**

13.

Contrary to the requirements of the ADA, the Defendant has denied Complainant accommodations and other benefits guaranteed under federal law. The facts surrounding said denials are as follows:

a)     The Defendant's New Orleans branch is operated and managed by the company's Executive Vice-President, André Celestine.

b) Complainant was hired to work at the aforementioned New Orleans location by Mr. Celestine's spouse, Adrienne.

c) Complainant's hire date was November 6, 2006, and her original position with the company was "Office Assistant." Her position was full-time, and her rate of pay was $10.15 per hour.

d) Adrienne Celestine left her position with Al's Pest Control in February of 2007. Thereafter, Complainant's duties within the company's New Orleans branch steadily increased. Within a short period of time, Complainant was involved in nearly every facet of the New Orleans office operation.

e) In 2013, Complainant was promoted to "Office Manager" and her pay was increased to $12.25 per hour.

f) During her entire tenure with the Defendant, Complainant received no formal discipline or written reprimands.

g) In 2019, Vice President, André Celestine, hired a new "Personal assistant," by the name of Elizabeth Bazenec.

h) Around the time of Elizabeth Bazenec's arrival at the Defendant's New Orleans location, Complainant began to experience increasingly-severe symptoms associated with her above-listed health conditions.

i) Complainant began to suffer more frequent arthritic flare-ups in her knees and hips, which eventually limited her ability to sit for prolonged periods of time while working.

j) In addition, symptoms stemming from Complainant's carpel tunnel syndrome began to make typing and other computer work difficult and painful to perform.

k) In response to these and other health problems, Complainant's treating orthopedic physician eventually recommended the use of an ergonomic office chair and ergonomic computer peripherals.

l) Said physician supplied Complainant with written orders concerning the aforementioned recommendations in January of 2020. Complainant, in turn, presented these orders to her employer soon thereafter, requesting that her office be equipped with the ergonomic equipment she required.

m) Despite the medical necessity of this requested office equipment, however, André Celestine refused to provide Complainant with these or any other reasonable accommodations.

n) Complainant shows that, had she been supplied with the aforementioned office equipment, her ability to perform her essential job functions would have been maintained.

o) As it was, however, Complainant's health continued to deteriorate. In addition to the aforementioned arthritic complaints, she also began to experience symptoms associated with hypertension, as well as occasional, anxiety-induced "psychogenic seizures" while on the job.

p)   As Complainant's health problems began to manifest and worsen, André Celestine began to assign more and more of Complainant's job duties to Elizabeth Bazenec. Celestine also showed palpable favoritism toward Ms. Bazenec, providing her with several work opportunities previously denied to Complainant and her co-workers.  For example, Ms. Bazenec was permitted to work from home, while Complainant was denied the same benefit despite repeated requests. In addition, Ms. Bazenec was allowed to enroll and sit for pest technician training and certification testing – something Complainant had requested and been denied numerous times.

q)   Ms. Bazenec was further permitted to exert more and more authority over Complainant and her co-workers, until eventually, she assumed the role of a "de facto supervisor" over the New Orleans location.

r)   Beginning in 2010, André Celestine's father, Allen Celestain, another officer within the company, made frequent disparaging comments about Complainant and her health problems whenever he was present in the New Orleans location, telling Complainant and others that she was "having too many doctor appointments" and that she was "getting a little wide" for her desk chair.  Complainant reported these and other comments to André Celestain, who did nothing in response.

s)   In March of 2020, Complainant requested a meeting with André Celestine in order to discuss her ongoing health complaints and anxiety levels, as well as Elizabeth Bazenec's increasingly hostile behavior toward her. At the meeting, Celestine said "I need Elizabeth around just in case you drop dead tomorrow" and "I will still have a business to run once you're gone." Although Complainant's health had begun to deteriorate around this time, she nevertheless remained capable of performing all of her job duties, and more besides. Again, nothing was done to accommodate Complainant's health conditions or limitations.

t)   Finally, on June 26, 2020, Complainant took a medical leave of absence under the Family Medical Leave Act, in order to address her steadily-worsening hypertension, anxiety, dysphasia, arthritic conditions, pseudoseizures, and other health concerns.

u)   On July 17, 2020, after nearly a month of intense medical testing, therapy, and other recovery efforts, Complainant contacted André Celestine and informed him she would be returning to work shortly thereafter.

v)   However, on July 23, 2020, Complainant received a letter from Mr. Celestine via email stating that her employment with Al's Pest Control was terminated "with immediate effect" because "the decision to move the office administration in another direction has been made."

w)   A the time of Complainant's termination, Ms. Bazenec had already moved into Complainant's former office, had been permitted to redecorate, and was provided new office furniture, *including a new desk chair*.

x)   According to an organizational chart for the company's New Orleans location provided to the EEOC during its investigation, Elizabeth Bazenec's position was "Branch Manager."

14.

Complainant contends that her above-listed medical conditions, as well as her employer's negative perception of her as "disabled" were major motivating factors underlying the Defendant's decision to terminate her employment. Thus, said termination was a violation of the Americans With Disabilities Act entitling complainant to the recovery of all damages, pecuniary and non-pecuniary, caused thereby.

15.

Complainant further shows that the Defendant's failure to provide her with requested reasonable accommodations in connection with her aforementioned medical conditions constituted a separate and distinct violation of the ADA, thus providing Complainant with a secondary claim for the damages sought herein.

IV.   **VIOLATIONS OF THE ADEA**

16.

At her time of hire with Al's Pest Control, Elizabeth Bazenec was 21 years old.

17.

Throughout Ms. Bazenec's tenure with the company, up to the time of Complainant's termination, André Celestine made it clear to Complainant and others that he favored Ms. Bazenec because she was younger than Complainant and her other co-workers.

18.

From 2019 through July of 2020, Mr. Celestine made frequent derogatory comments to Complainant and others regarding Complainant's age and his preference for younger staff members. During this period, Mr. Celestain also replaced at least one other employee with a younger, lighter-skinned female.

19.

Accordingly, Complainant shows that her termination and other disparate treatment while on the job was based on age, and thus a violation of the Age Discrimination in Employment Act.

## V.    VIOLATIONS OF TITLE VII AND THE EQUAL RIGHTS STATUTE

20.

Complainant further shows that her employer's preferential treatment of Elizabeth Bazenec, up to and including Complainant's eventual termination and replacement, was motivated by André Celestine's preference for lighter-complected employees, which preference Mr. Celestine vocalized on numerous occasions within ear-shot of both Complainant and other co-workers. For example, Mr. Celestine was often heard voicing his belief that "light-skin belongs at the front desk."

21.

Accordingly, Complainant shows that her termination and other disparate treatment while on the job was based on "color," and thus a violation of Title VII of the Civil Rights Act of 1964, as well as 42 USCA §1981.

## VI.    DIRECT LIABILITY

22.

Because André Celestine is both an Executive Vice-President and corporate Officer of Al's Pest Control, said company is directly liable for any and all prohibited discriminatory acts committed by Mr. Celestine against Complainant, the company's former employee.

23.

Thus the Defendant, Al's Pest Control Service, Inc. is liable for all discriminatory actions of its supervisory personnel which caused injury to Complainant and which were motivated by a desire to remove a perceived problematic, disabled, older, and darker-skinned employee from the company's payrolls.

## VII. DAMAGES

24.

As a direct and proximate result of the Defendant's unlawful discrimination, Complainant has sustained both general and special damages, all of which are claimed herein.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Complainant requests that her Complaint and Demand for Damages be filed herein, that the Defendant be served with same and cited to appear and answer same, and that, after due proceedings are had, Judgment enter against the Defendant providing Complainant with all of the following relief:

a) Compensatory damages in an amount, exclusive of costs and interest, to which Complainant is deemed entitled at the conclusion of these proceedings;

b) Punitive and/or exemplary damages against the Defendant in whatever amount, exclusive of costs and interest, is deemed appropriate herein;

c) Interest, costs, and reasonable attorney's fees;

d) Any and all other remedies which may be available and appropriate pursuant to the ADA, the ADEA, Title VII, 42 USCA §1981, and/or any other applicable provision of State and/or Federal law; and

e) Such further general and equitable relief as the Court may find appropriate under the circumstances.

**RESPECTFULLY SUBMITTED:**

**A. A. ADKINSON, ATTORNEY, LLC**

Alistair A. Adkinson (LA Bar Roll #27761)
1539 Jackson Ave., Ste. 218
New Orleans, LA 70130
(504) 309-8735 (voice)
(800) 520-4402 (fax)
Email: Alistair@tripleAlawyer.com
***Attorney for Nicole Beverly***